1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9      FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   HOMER MCWILLIAMS,                )        No. C 06-3836 MMC (PR)
                                      )
12              Petitioner,           )        **ORDER DENYING**
        vs.                           )        **PETITION FOR WRIT OF**
13                                    )        **HABEAS CORPUS**
     R. AYERS, Warden,                )
14                                    )
                Respondent.           )
15   _____ )
16
17                        **INTRODUCTION**
18          On June 20, 2006, petitioner Homer McWilliams, a California state prisoner
19   proceeding pro se, filed, pursuant to 28 U.S.C. § 2254, the above-titled petition for a writ
20   of habeas corpus, by which he challenges a 2004 decision by the Board of Prison Terms
21   ("Board") that he is unsuitable for parole.[1]  The Court subsequently directed respondent
22   to show cause why petitioner's cognizable claims should not be granted, after which
23   respondent filed an answer addressing the merits of the petition and petitioner filed a
24   traverse.  Having reviewed the parties' respective submissions and the underlying record,
25   the Court concludes petitioner is not entitled to relief based on the claim presented, and
26   will deny the petition.
27
28   _____

          [1]The petition was initially filed in the Central District, which transferred the action
     to this district because petitioner is currently incarcerated in San Quentin State Prison.

**BACKGROUND**

In 1984, in the Superior Court for the County of Los Angeles, petitioner pleaded nolo contendere to a charge of second degree murder, see Cal. Pen. Code § 187, which charge included an allegation that he used a firearm in the commission of a felony, see id. §12022.5. (Ans. Ex. 1 (Judgment 8/3/84)).  He was sentenced to a term of fifteen years to life. (Id.)  In November 2004, the Board found petitioner unsuitable for parole, on the ground he "would pose an unreasonable risk of danger to society or a threat to public safety if released."[2]  (Ans. Ex. 2 (Parole Hearing Transcript 11/29/04) at 63.)

In reaching its decision, the Board accepted the following facts taken from the probation officer's report:  In 1982, petitioner, having used methamphetamine, shot Jeff Steward ("Steward") in the head during an argument over some "bad drugs" Steward assertedly had sold him; petitioner then put the corpse in a barrel and into his van, eventually disposing of the body in the desert.  Petitioner does not dispute these facts.[3] (Id. at 13–14, 16, 67.)

At the parole hearing, the Board reviewed petitioner's record, including the circumstances of his commitment offense, his criminal history, his behavior in prison, and the opinion of law enforcement on the question of parole.  With respect to the commitment offense, the Board found the crime "cold-blooded." (Id. at 63.)  As to petitioner's criminal history, the Board observed that petitioner had "an escalating pattern of criminal conduct." (Id. at 64.)  The Board acknowledged that petitioner had "programmed very well" while incarcerated, having "taken advantage of a lot of the [drug treatment and education programs] that are available to him" (id.), and that his most recent psychological report concluded he "pos[ed] no substantial risk for dangerousness if

---

[2] Thereafter, in 2007, the Board found Petitioner suitable for parole, which decision ultimately was reversed by the Governor of California. (See Trav. Ex. A at unnumbered pages 7-10.)

[3] The record indicates that Steward was not armed and, indeed, was merely seated and holding a sandwich at the time he was shot. (Id. at 13.)

1    released to the outside community" (id. at 40).  The Board noted, however, that petitioner

2    had committed multiple disciplinary infractions while in prison, including two citations

3    for "force and violence."  (Id.)  A representative of the Los Angeles District Attorney

4    voiced the district attorney's opposition to parole, and a notice of the Los Angeles

5    Sheriff's Office's opposition to parole was acknowledged on the record.  (Id. at 31–32,

6    52–54.)  After a full hearing, during which all of the above evidence was considered, the

7    Board found petitioner unsuitable for parole.  (Id. at 63.)

8         In response to the Board's decision, petitioner filed state habeas petitions, later

9    denied, in the Los Angeles Superior Court, California Court of Appeal, and California

10   Supreme Court.  (Id. Exs. 10–12.)  In 2006, petitioner filed the instant federal petition,

11   alleging that the Board (1) violated his constitutionally protected liberty interest by

12   denying him parole based on the unchanging fact of his commitment offense; (2) violated

13   his right to due process because the record does not support such a denial and the Board

14   failed to consider information favorable to him; (3) violated his right to Equal Protection

15   by denying him parole based solely on the unchanging factor of his commitment offense;

16   and (4) the Board and the "County of Commitment" have breached his plea agreement by

17   opposing his release on parole.  (Pet. at 5–6; Order to Show Cause at 2.)

                                   **DISCUSSION**

19   **A.    Standard of Review**

20        This Court may entertain a petition for a writ of habeas corpus "in behalf of a

21   person in custody pursuant to the judgment of a State court only on the ground that he is

22   in custody in violation of the Constitution or laws or treaties of the United States."  28

23   U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

24        A district court may not grant a petition challenging a state conviction or sentence

25   on the basis of a claim that was reviewed on the merits in state court unless the state

26   court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or

27   involved an unreasonable application of, clearly established Federal law, as determined

28   by the Supreme Court of the United States; or (2) resulted in a decision that was based on

                                         3

1  an unreasonable determination of the facts in light of the evidence presented in the State

2  court proceeding." 28 U.S.C. § 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 412–13

3  (2000).  A federal court must presume the correctness of the state court's factual findings.

4  28 U.S.C. § 2254(e)(1).  Habeas relief is warranted only if the constitutional error at issue

5  had a "'substantial and injurious effect or influence in determining the jury's verdict.'"

6  <u>Penry v. Johnson</u>, 532 U.S. 782, 796 (2001).

7       The state court decision implicated by 2254(d) is the "last reasoned decision" of

8  the state court.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803–04 (1991); <u>Barker v.</u>

9  <u>Fleming</u>, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  Where there is no reasoned opinion

10 from the highest state court to have considered the petitioner's claims, the district court

11 looks to the last reasoned state court opinion, which, in this instance, is the opinion of the

12 Los Angeles Superior Court.  (Ans Ex. 10.); <u>See</u> <u>Nunnemaker</u>, 501 U.S. at 801–06;

13 <u>Shackleford v. Hubbard</u>, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

14 **B.    Petitioner's Claims**

15      **1.    Reliance on Commitment Offense**

16      Petitioner claims (a) the Board's continued reliance solely on the unchanging

17 factor of the circumstances of the commitment offense resulted in a violation of due

18 process, (b) the Board's decision was unsupported by the record, and (c) the Board failed

19 to consider all relevant and reliable evidence available, including evidence favorable to

20 petitioner.  (Pet. at 5.)   The superior court rejected petitioner's argument that the Board

21 cannot rely on static factors to deny parole, but also concluded the Board had considered

22 other factors as well.   (<u>See</u> Ans. Ex. 10 at 2–3 (noting "the record reflects the Board

23 considered petitioner's post-conviction gains but still concluded Petitioner would pose an

24 unreasonable threat to public safety").)

25      The Board's denial of parole complies with due process provided there is "some

26 evidence" to support its decision.  A parole board's decision deprives a prisoner of due

27 process if the Board's decision is not supported by "some evidence in the record," or is

28 otherwise "arbitrary." <u>See</u> <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-55 (1985); <u>Sass v.</u>

1   California Bd. of Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006).  Additionally, the

2   evidence underlying the Board's decision must have "some indicia of reliability."  See

3   McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).  Accordingly, if the Board's

4   determination with respect to parole suitability is to satisfy due process, such

5   determination must be supported by some evidence having some indicia of reliability.

6   Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

7        In assessing whether there is "some evidence" to support the Board's denial of

8   parole, this Court must consider the regulations that guide the Board in making its parole

9   suitability determinations.  Pursuant to such regulations, "[t]he panel shall first determine

10  whether the life prisoner is suitable for release on parole[;] [r]egardless of the length of

11  time served, a life prisoner shall be found unsuitable for and denied parole if in the

12  judgment of the panel the prisoner will pose an unreasonable risk of danger to society if

13  released from prison."  15 Cal. Code Regs. § 2402(a).  Additionally, the regulations

14  enumerate various circumstances tending to indicate whether or not an inmate is suitable

15  for parole.  Id., § 2402(c)–(d).[4]  One circumstance tending to show an inmate's

16  unsuitability is that the crime was committed in an "especially heinous, atrocious or cruel

17  manner."  Id., § 2402(c).  Two factors that the parole authority may consider in

18  determining whether such a circumstance exists are whether "[t]he offense was carried

19  out in a manner that demonstrates an exceptionally callous disregard for human

20  suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in

21

22        [4]  The circumstances tending to show an inmate's unsuitability are: (1) the
    commitment offense was committed in an "especially heinous, atrocious or cruel
23  manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual
    offenses; (5) psychological factors such as a "lengthy history of severe mental problems
24  related to the offense;" and (6) prison misconduct. 15 Cal. Code Regs. § 2402(c). The
    circumstances tending to show suitability are: (1) no juvenile record; (2) stable social
25  history; (3) signs of remorse; (4) commitment offense was committed as a result of stress
    which built up over time; (5) Battered Woman Syndrome;   (6) lack of criminal history;
26  (7) age is such that it reduces the possibility of recidivism; (8) plans for future including
27  development of marketable skills; and (9) institutional activities that indicate ability to
    function within the law. Id. § 2402(d).
28

1   relation to the offense." Id., § 2402(c)(1)(D) & (E).  In addition to these factors, the

2   Board is to consider "all relevant, reliable information available." Id., § 2402(b).

3       It is now established under California law that the task of the Board is to determine

4   whether the prisoner would be a danger to society if he or she were paroled.  See In re

5   Lawrence, 44 Cal. 4th 1181 (2008).  Consequently, the constitutional "some evidence"

6   requirement is that there exists some evidence that the prisoner constitutes such a danger,

7   not simply that there exists some evidence of one or more of the factors listed in the

8   regulations as considerations appropriate to the parole determination. Id. at 1205–06.

9       In that regard, however, a parole authority's continued reliance on the

10  circumstances of the commitment offense as the sole basis for denying parole can, over

11  time, raise due process concerns.  See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir.

12  2003).  "[I]n some cases, indefinite detention based solely on an inmate's commitment

13  offense, regardless of the extent of his rehabilitation, will at some point violate due

14  process, given the liberty interest in parole that flows from the relevant California

15  statutes." Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007).

16      Here, the Court cannot say the state court was unreasonable in concluding there is

17  some evidence to support the Board's decision that petitioner would be a danger to

18  society if released.  Contrary to petitioner's assertion that the Board relied solely on the

19  facts of the commitment offense, the record shows that the Board identified several other

20  bases in the record for its decision, including petitioner's criminal history, his behavior in

21  prison, and the views of law enforcement.  (Ans. Ex. 2 at 63–64.)  Moreover, the factors

22  the Board considered support its decision.

23      First, some evidence clearly exists to support the Board's determination that the

24  circumstances of the commitment offense indicated petitioner presented a risk of danger

25  to society if released.  The record contains evidence that the commitment offense was

26  committed in an "especially heinous, atrocious or cruel manner," a circumstance tending

27  to show parole unsuitability, see 15 Cal. Code Regs. § 2402(c), as the record contains

28  evidence that "[t]he offense was carried out in a manner that demonstrates an

exceptionally callous disregard for human suffering," "[t]he motive for the crime is inexplicable or very trivial in relation to the offense," and "[t]he offense was carried out in a dispassionate and calculated manner," see id., § 2402(c)(1)(B), (D) & (E). Specifically, petitioner, in the course of a verbal argument, shot an unarmed man in the head, stuffed the body into a barrel and then trucked it to the desert and dumped it. Under such circumstances, the Board's description of the offense as "cold-blooded" is not unreasonable. While at some point in the future, the circumstances of the commitment offense may cease to have probative value as to the question of petitioner's dangerousness, they constitute, as of the time of the Board's decision, some evidence to support the Board's finding.

Additionally, petitioner's record of behavior in prison as well as his criminal history constitute evidence of petitioner's unsuitability for parole. While in prison, petitioner committed at least fifteen disciplinary infractions, two of which were for the use of "force and violence" (Ans. Ex. 2 at 64), and, as the Board also noted, petitioner had a record of "escalating criminal conduct," starting with a 1974 petty theft, followed by disorderly conduct, burglary, threatening a witness, possession of a deadly weapon, and culminating in the instant murder (id. at 45).

In sum, the Board's decision is supported by some evidence, including evidence other than the circumstances of the commitment offense.

Accordingly, this claim will be denied.

**2.    Equal Protection**

Petitioner claims the Board violated his equal protection rights "when they denied [him] parole based on unchanging factors." (Pet. at 6.) Petitioner further contends the Board "did not seriously take into account the 15–20 years of rehabilitative efforts that supports a finding of 'suitability.'" (Id.)

Petitioner's "equal protection" claim is wholly duplicative of petitioner's due process claim; as such, it does not state an equal protection claim.

Accordingly, this claim will be denied.

1

### 3.     Plea Agreement

2   Petitioner claims that respondents violated his plea agreement "in [their] reliance

3   on preconviction criteria and prior non-criminal prison conduct and perceived need for

4   programming not required under the plea agreement." (Pet. at 6.) Petitioner also claims:

5   "I was never informed that any of the [respondents] could oppose my release if I upheld

6   my obligation." (Id.) The superior court rejected this claim, finding: "Petitioner agreed

7   to an indeterminate term of fifteen years to *life*. He does not allege that the District

8   Attorney's office promised he would serve the minimum term or would not oppose

9   parole." (Ans. Ex.10 at 3 (emphasis in original).)

10   "[D]ue process rights conferred by the federal constitution allow [a defendant] to

11   enforce the terms of the plea agreement." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir.

12   2003). Plea agreements are construed using the ordinary rules of contract interpretation.

13   See id. at 1159. "[W]hen a plea rests in any significant degree on a promise or agreement

14   of the prosecutor, so that it can be said to be a part of the inducement or consideration,

15   such promise must be fulfilled." See Santobello v. New York, 404 U.S. 257, 262 (1971);

16   see also Brown, 337 F.3d at 1159 (holding prosecutor's promise that petitioner would be

17   released on parole after serving half the minimum sentence discipline-free was binding).

18   Here, petitioner's claim is without merit because he has failed to present evidence

19   to rebut the factual finding of the superior court that he agreed to a term of fifteen years to

20   life and that he failed to allege the district attorney would not oppose parole. Absent clear

21   and convincing evidence to the contrary, the Court must presume the state court's factual

22   findings are correct. See 28 U.S.C. § 2254(e)(1). Indeed, petitioner has failed to make

23   any showing that the plea agreement contained promises by the district attorney or

24   anyone else regarding parole. Further, there is no support for petitioner's claim that,

25   because of the plea agreement, the Board was prohibited from considering any particular

26   factors when determining his suitability for parole. The Board is authorized to "consider

27   all relevant and reliable information." Title 15 Cal. Code of Regs. § 2402(b).

28   Accordingly, this claim will be denied.

**CONCLUSION**

Because the record contains, at a minimum, some evidence to support the Board's finding that petitioner would present an unreasonable risk of danger to society if released, and because petitioner has made an insufficient showing as to his entitlement to relief on his other claims, the Court finds the state court's determination was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor can the Court say it was based on an unreasonable determination of the facts.

Accordingly, the petition for a writ of habeas corpus is hereby DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: April 15, 2009

MAXINE M. CHESNEY
United States District Judge